*In re* MARRIAGE OF PHYLLIS IRENE STUFFLEBEAM,
Petitioner-Appellant, and RAYMOND F. STUFFLEBEAM,
Respondent-Appellee.

Third District   No. 3—96—0112

Opinion filed September 23, 1996.

James L. Tappa (argued), of Spector, Tappa & Nathan, of Rock Island, for appellant.

Franklin S. Wallace and David L. Cunningham (argued), both of Winstein, Kavensky & Wallace, of Rock Island, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The petitioner, Phyllis Stufflebeam, n/k/a Phyllis Cole (wife), appeals from a judgment of dissolution of marriage entered January 3, 1996. The judgment distributed the property owned by the wife and the respondent, Ray Stufflebeam (husband).

On appeal, the wife argues that the trial court: (1) erred in vacating a judgment inadvertently entered on September 21, 1995; (2) abused its discretion in determining the parties' marital property; (3) abused its discretion in distributing the parties' marital property; (4) abused its discretion in determining marital debts; and (5) abused its discretion when it did not order the husband to pay all of the wife's attorney fees.

After carefully reviewing the record, we first conclude that the September 21, 1995, judgment was properly vacated pursuant to section 2—1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1401 (West 1994)). We also conclude that the trial court did not abuse its discretion in classifying and distributing the parties' assets and debts or in ordering the husband to pay one-half of the wife's attorney fees. As a result, we affirm.

## FACTS

On January 11, 1988, the husband and wife entered into a prenuptial agreement. The agreement listed the property owned at that time by both the husband and the wife. The list of the husband's property was titled "exhibit A" and included a "house & 61 acres." The value of this property was listed at $80,000 and a liability against the property was listed at $20,000. The agreement stated:

"6. That after such marriage all of the property of any kind or nature, real, personal or mixed, wheresoever situated, belonging to the husband, and identified on the attached 'Exhibit A,' before the marriage *and any increase thereof*, or any property acquired by him after such marriage, shall be and remain forever his own separate property and estate." (Emphasis added.)

The parties were married on January 17, 1988. On February 21, 1990, the husband and wife signed a document entitled "mutual ac-

knowledgement concerning prenuptial agreement." This document stated that the wife used $12,500 of her own funds to discharge a portion of the debt on the husband's house. Accordingly, the parties agreed that, in the event of a dissolution of marriage, the husband would reimburse the wife the sum of $12,500, without interest.

The parties separated in May 1993, and the wife filed her petition for dissolution of marriage on November 19, 1993. On May 11, 1995, the trial court entered a judgment finding grounds for dissolving the marriage. The wife was authorized to resume her former name of Phyllis Cole.

On July 5, 1995, a hearing was held regarding the division of the parties' property and attorney fees. The wife testified that she was 56 years old and worked part-time as a registered nurse. Tax returns showing her 1993 and 1994 income were admitted into evidence but have not been included in the record on appeal. However, her portion of the pretrial memorandum stated that her current gross monthly income was $1,845, or $22,140 per year.

The wife testified that she put various amounts of her own non-marital funds into the parties' joint account during the course of the marriage. She stated that they used $4,700 of the money in the joint account to make improvements on the husband's house. She said she also did wallpapering, painting and landscaping to improve the appearance of the home.

She stated that, during the marriage, her husband purchased a truck, farm equipment and a bull with money from the parties' joint account. She used her own nonmarital funds to invest in several businesses during the marriage, including an antique business. She stated that the businesses no longer existed and had no value. However, she did say that she still had possession of some antiques, including various items purchased with money from the joint account.

The wife testified that she separated from her husband in May 1993. At that time, she took $4,900 out of the parties' joint account. After she left, her car broke down and she bought a 1992 Buick. At the time of the hearing, she still owed $9,000 for the car, and she had borrowed $3,300 for living expenses. Moreover, she testified that she had to buy everything after she separated because her husband kept all of the assets they accumulated during the marriage.

The husband testified that he was 67 years old and retired. He received $1,500 per month from his pension and social security. He also had rental income of approximately $200 per month. He has rheumatoid arthritis and walks with crutches. In February 1995, he had a lung partially removed. As a result of these medical conditions,

he can no longer take care of himself and has live-in help at a cost of $200 per week. He testified that the bull he purchased during the marriage was sold for $1,000.

Following the hearing, the trial judge asked both parties to submit a proposed order. On September 21, 1995, the judge signed a judgment resolving the property issues. The judgment stated that the husband was to pay the wife's car loan and her $3,300 loan for living expenses. It also stated that the husband was to pay the $12,500 due the wife for her payment toward the mortgage on the house. In addition, the husband was to pay the wife a "property settlement the sum of $72,500.00" and the wife's attorney fees in the amount of $3,000.

On November 8, 1995, the husband filed a "motion to vacate and for *nunc pro tunc* order." He stated that he had submitted a proposed judgment to the trial judge on July 12, 1995. He said he received a copy of the wife's proposed judgment around September 6, 1995. On November 1, 1995, the husband's attorney received a letter from the wife's counsel asking when the husband would be paying the judgments entered against him. The husband's attorney checked at the Henry County courthouse and found that a judgment had been signed by the trial judge on September 21, 1995. The husband stated in his motion that it was his belief that the trial judge inadvertently signed and entered the wife's proposed judgment. He also stated that he was not notified that the judgment had been entered until he received the letter from the wife's attorney on November 1, 1995.

In response, the wife filed a motion to dismiss the husband's motion to vacate. She claimed that the trial court did not have jurisdiction to vacate the September 21, 1995, judgment because more than 30 days had passed since the judgment was entered.

A hearing was held on November 17, 1995. The trial judge stated that he did not remember what happened. The judge said that he did not intend to enter the judgment he signed on September 21, 1995. He also said that he must have signed the judgment out of inadvertence or neglect. Furthermore, during the hearing, the trial judge said:

> "I can state unequivocally that the findings made in that order are not the findings that I formulated during my reflection of this case during the trial or after the trial."

The judge then said that he was vacating the order because "[t]o do otherwise would be totally inconsistent with the ends of justice."

On January 3, 1996, the trial court entered a new judgment in the case. In this judgment, the court found the wife had income of over $20,000 in 1994; that the wife was not entitled to reimburse-

ment for her contributions to the husband's nonmarital house; and that she was entitled to one-half of the sale price of the bull purchased during the marriage, or $500. The judgment also stated that the husband would pay the wife: $12,500 owed under the acknowledgement to the prenuptial agreement; $1,616 for her one-half of the $13,033 in the joint account at the time of separation, less the $4,900 she already received; and $7,427.50 for reimbursement for one-half of the marital property retained by the husband. In addition, the January 3, 1996, judgment said the wife was responsible for her own debts and the husband was required to pay one-half of her attorney fees or $1,500. The wife appeals from the entry of the January 3, 1996, judgment.

## ANALYSIS

### I. Vacating the September 21, 1995, Judgment

■ The wife first claims that the trial court lacked jurisdiction to vacate the judgment inadvertently entered on September 21, 1995. The wife does not contest the trial court's finding that it did not intend to sign or enter the judgment. Nevertheless, she contends that the trial court lost jurisdiction to vacate the judgment 30 days after it was entered. She also argues that the judgment could not be vacated under section 2—1401 of the Code and that a *nunc pro tunc* order was not appropriate.

We initially find that no *nunc pro tunc* order was entered in this case, so that issue is not properly before us. In addition, we do not agree with the wife's contention that a trial court cannot vacate an order that was inadvertently entered. Based on our review of the record, we conclude that the September 21, 1995, judgment was properly vacated under section 2—1401 of the Code.

It is true that, as a general rule, the trial court loses jurisdiction to review its judgments after the passage of 30 days. *Universal Outdoor, Inc. v. City of Des Plaines*, 236 Ill. App. 3d 75, 80, 603 N.E.2d 585, 588 (1992). However, section 2—1401 provides a comprehensive statutory procedure by which final orders and judgments may be vacated more than 30 days following their entry. 735 ILCS 5/2—1401 (West 1994); *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220, 499 N.E.2d 1381, 1386 (1986). To be entitled to relief under section 2—1401, a petitioner must set forth allegations supporting: (1) the existence of a meritorious claim or defense; (2) due diligence in presenting the claim or defense to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief. *Smith*, 114 Ill. 2d at 220-21, 499 N.E.2d at 1386.

A party seeking to vacate a voidable judgment may properly

proceed under section 2—1401. *In re Marriage of Stefiniw*, 253 Ill. App. 3d 196, 201, 625 N.E.2d 358, 362 (1993). A voidable judgment is one that appears valid but may be avoided if a party demonstrates that it was rendered in error. *Stefiniw*, 253 Ill. App. 3d at 200, 625 N.E.2d at 361.

We recognize that the husband's motion was not designated as a section 2—1401 petition. However, a motion to vacate filed more than 30 days after the entry of an order *must* be construed as a section 2—1401 petition. *Ligon v. Williams*, 264 Ill. App. 3d 701, 706, 637 N.E.2d 633, 637 (1994); *Northern Illinois Gas Co. v. Midwest Mole, Inc.*, 199 Ill. App. 3d 109, 115, 556 N.E.2d 1276, 1280 (1990). Relief from final judgments and orders rests within the equitable powers of the trial court (*In re Marriage of Palacios*, 275 Ill. App. 3d 561, 566, 656 N.E.2d 107, 111 (1995)), which should prevent enforcement of a judgment when it would be unfair, unjust or inequitable (*Pronto Two Ltd. v. Tishman Speyer Monroe Venture*, 274 Ill. App. 3d 624, 627, 653 N.E.2d 1327, 1328 (1995)). The trial court's ruling will not be disturbed absent an abuse of discretion. *Smith*, 114 Ill. 2d at 221, 499 N.E.2d at 1386; *Palacios*, 275 Ill. App. 3d at 566, 656 N.E.2d at 111.

We conclude from the pleadings and the record that the husband met the requirements of section 2—1401. He showed due diligence when he filed his motion to vacate the judgment. The husband filed his motion immediately after he discovered the entry of the September 21, 1995, judgment. We further conclude that the trial court did not abuse its discretion when it vacated the September 21, 1995, judgment. We agree with the trial court that the judgment was entered in error and was voidable. Also, the trial court was correct when it indicated that enforcement of the inadvertently entered judgment would be unfair, unjust and inequitable. For these reasons, we conclude that the September 21, 1995, judgment was properly vacated under section 2—1401.

## II. Property Issues and Attorney Fees

The wife next claims that the trial court abused its discretion when it entered the January 3, 1996, judgment. She argues that: (1) she should have been reimbursed for contributions made to the husband's house from the parties' joint account and for her own personal efforts in improving the property; (2) she should have been awarded more than one-half of the marital property based upon her contributions to the marriage; (3) the husband should have been ordered to pay the debts she incurred for her car and for living expenses; and (4) the husband should have been ordered to pay all of her attorney fees of $3,000.

■ First, we find no merit to the wife's arguments regarding the husband's nonmarital house. The wife has never challenged the validity of the prenuptial agreement. We note that prenuptial agreements are generally enforceable (*In re Estate of Hopkins*, 166 Ill. App. 3d 652, 656, 520 N.E.2d 415, 417 (1988)) and may determine the rights each party will have in the other's property (*In re Marriage of Jelinek*, 244 Ill. App. 3d 496, 502, 613 N.E.2d 1284, 1289 (1993)). According to the clear language of the prenuptial agreement, the husband's house, including any increase in its value, remained his separate property. When the wife contributed $12,500 to help pay off the mortgage on the house, an agreement modifying the prenuptial agreement was executed by the parties so that she would be reimbursed for her contribution. In the absence of any other modifying agreement, the wife is not entitled to be reimbursed for any other contributions to the house.

■ Second, a trial court's distribution of marital property will not be reversed absent a showing that the trial court abused its discretion. *In re Marriage of Swanson*, 275 Ill. App. 3d 519, 528, 656 N.E.2d 215, 222 (1995). An abuse of discretion occurs only when no reasonable person could find as the trial court did. *In re Marriage of Ward*, 267 Ill. App. 3d 35, 41, 641 N.E.2d 879, 885 (1994). In this case, the marriage was of relatively short duration and the husband is retired, ill, and receives only a modest monthly income. Based on these circumstances, we find that the trial court did not abuse its discretion when it awarded the wife one-half of the value of the marital property.

■ Third, we reject the wife's argument that the husband should have been ordered to pay her debts. Debts incurred by one party following separation may be considered marital, and it is within the trial court's discretion to order that the debts be paid by the other party. *In re Marriage of Goforth*, 121 Ill. App. 3d 673, 683, 459 N.E.2d 1374, 1381-82 (1984). However, the party incurring the debts can be held responsible to pay them. See *Szesny v. Szesny*, 197 Ill. App. 3d 966, 972, 557 N.E.2d 222, 226 (1990). Based upon the record in this case, we find the trial court did not abuse its discretion in assigning the debts to the wife. The evidence shows that the wife had the economic means to pay the debts because she had income from her employment and received liquid assets under the terms of the January 3, 1996, judgment.

■ In her final argument, the wife contends that the husband should have been ordered to pay all of her attorney fees. The law is well settled that attorney fees are the primary obligation of the party for whom the services are rendered. *In re Marriage of McCoy*, 272 Ill.

App. 3d 125, 130, 650 N.E.2d 3, 6 (1995). The allowance of attorney fees in a dissolution of marriage proceeding and the proportion to be paid by each party are best left to the trial court's sound discretion and will not be disturbed on review absent an abuse of that discretion. *McCoy*, 272 Ill. App. 3d at 130-31, 650 N.E.2d at 6. From our review, we find nothing in the record to indicate that the trial court abused its discretion when it ordered the husband to pay only one-half of the wife's attorney fees.

## CONCLUSION

For the reasons stated, the judgment of the circuit court of Henry County is affirmed.

Affirmed.

SLATER and MICHELA, JJ., concur.