# Illinois Official Reports

## Appellate Court

*In re Marriage of Abu-Hashim*, 2014 IL App (1st) 122997

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF KIMBERLY ABU-HASHIM, Petitioner-Appellee, and RAJAIE ABU-HASHIM, Respondent-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-2997 |
| Filed | June 25, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the dissolution of the parties' marriage, the appellate court held that the distribution of marital debt was not an abuse of discretion where the amount owed on the home equity line of credit was deducted from the net equity amount awarded to respondent, the even division of the 401(k) plan was not an abuse of discretion after each party withdrew $50,000 for attorney fees, the trial court did not abuse its discretion in valuing the parties' daycare center pursuant to its own method in the absence of meaningful valuation evidence, and with regard to child support, there was no basis for a deviation from the statutory guidelines, respondent was properly ordered to pay retroactive support for the time after the dissolution petition was filed but before respondent started paying child support, and requiring respondent to include his income from his commercial rental property without a deduction for losses he had on his noncommercial rental property for purposes of establishing his monthly income was not an abuse of discretion, especially in the absence of such losses. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-D-3121; the Hon. Dominique C. Ross, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Jan R. Kowalski, of Chicago, for appellant.

Gail M. O'Connor, of O'Connor Family Law, PC, of Chicago, for appellee.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Mason concurred in the judgment and opinion.

**OPINION**

¶ 1        Appellate courts typically give great deference on the factual issues to the trial court hearing the dissolution of marriage proceeding. One reason is the trial court's familiarity with the dueling spouses, and if represented, their counsel, and its exposure to and grasp of the evidence in the context of the entire proceeding. Rajaie Abu-Hashim, who appeals certain provisions in a judgment for dissolution of his marriage from petitioner, Kimberly Abu-Hashim, raises issues that all relate to factual disputes resolved by the trial court. Rajaie has not carried his burden of showing an abuse of discretion, and, accordingly, we affirm the trial court's decisions.

¶ 2        Rajaie asserts that the trial court abused its discretion by: (1) allocating to him 100% of the $299,724.56 owed on a home equity line of credit on the parties' marital home; (2) failing to account for a prejudgment distribution to Kimberly of $50,000 from Rajaie's 401(k) account in equitably allocating the marital property; (3) valuing the parties' daycare business at $235,000, in the absence of evidence to support that valuation; and (4) failing to deviate from the statutory child support guidelines, ordering him to pay retroactive child support, and ordering him to pay child support on income from a profitable commercial rental property without offsetting the losses on other rental properties.

¶ 3                                              BACKGROUND

¶ 4        On April 1, 2008, Kimberly filed a petition for dissolution of marriage. The parties had four children. At the time the petition was filed, one of the children was emancipated and three were minors. In the interim, two of those children have been emancipated and one is currently 14 years old. On January 4, 2011, the trial court entered a custody judgment granting sole custody of the then three minor children to Kimberly and visitation rights to Rajaie. Later, one of the minor children went to live with her father, and the trial court entered an agreed order modifying the custody judgment to transfer sole custody of that child to Rajaie, reserving parenting time to Kimberly.

¶ 5        The trial court bifurcated its judgment. On April 27, 2011, the court entered an order dissolving the parties' marriage and reserving all remaining matters, including property and

debt division, child support, and reimbursement. Trial took 10 days and resulted in entry of a supplemental judgment on January 17, 2012. During their marriage, the parties acquired nine parcels of real estate, including seven apartment buildings, one commercial building, and their marital home. The parties also owned a business together, Alphabet Acres Daycare Center. In its supplemental judgment, the court allocated the real estate, the business, and the debt, and made determinations regarding child support, dissipation, and attorney fees.

¶ 6    Only those findings relevant to the issues raised on appeal will be addressed.

¶ 7    The trial court initially ruled the parties' real estate and business interests would be divided 65/35, in Kimberly's favor. Both parties waived maintenance. The court ordered Rajaie to pay Kimberly 32% of his net income, including bonuses, under the guidelines set forth in section 505(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/505(a)(1) (West 2012)). After one of the children moved in with Rajaie, the court ordered Kimberly to pay $705 per month in child support. Both parties filed claims alleging the dissipation of assets by the other party. The trial court denied those claims, concluding that "both parties used available funds and income for the purpose of maintaining their respective households, managing their many parcels of real estate and the care of the children."

¶ 8    As to the parties' property and business interests, the trial court awarded the parties' marital home to Rajaie. The court set the value of the house at $1,399,000, and noted it was encumbered by a mortgage with an unpaid balance of about $781,060.06 and a home equity line of credit with an outstanding balance of $299,724.56, leaving a net equity of $318,215.38. The parties stipulated that after the dissolution proceedings commenced, Kimberly drew $131,500 against the home equity line of credit, Rajaie drew $46,633.31, and the parties jointly drew $99,582.02. The court ordered Rajaie to pay Kimberly $209,107.69 for her 65% share of the equity on the home and rejected Rajaie's argument that Kimberly should be responsible for repaying the $131,500 she individually drew from the line of credit and half of the $99,582.02, the parties jointly drew.

¶ 9    Rajaie has a vested interest in a 401(k) plan through his employer. During the litigation, both parties were each permitted to take $50,000 from the account to pay for their respective attorney fees. In its supplemental judgment, the court ordered that the remaining balance of the 401(k) account be divided equally between them.

¶ 10    The parties co-owned a daycare center. The court awarded the business to Kimberly. The trial court found the testimony of the parties and the documents submitted into evidence provided little information as to the fair market value of the business and thus used an alternate means of assessing its value. The court noted the parties agreed Kimberly would take an annual draw of $85,000 from the income generated by the daycare center and multiplied that by three, the minimum number of years the court determined the business could remain viable based on the economy and the financial history of the business. The court then subtracted $20,000 in past-due rent and damages from flooding, for a total value of $235,000.

¶ 11    The parties owned seven residential rental properties in Illinois and Wisconsin. The court awarded four of those properties to Kimberly and three to Rajaie. The parties also co-owned a commercial rental property, referred to as 1410 S. Barrington. The court awarded Rajaie 1410 S. Barrington and ordered him to pay Kimberly $148,000 for her interest.

¶ 12    The parties filed separate motions to reconsider the supplemental judgment. The trial court held a hearing on the motions on May 31, 2012, and though an order was drafted, it was not entered at that time. On September 18, 2012, the trial court held another hearing in response to

Rajaie's motion for clarification and to hear other pending motions. After the hearing, the trial court entered an order disposing of the cross-motions to reconsider.

¶ 13 The trial court made several changes to the original supplemental judgment, including adjusting the real estate division from a 65/35 split to a 50/50 split. Relevant to this appeal is the provision of the order requiring Rajaie to pay Kimberly an additional $20,748.53 in child support for income he earned from 1410 S. Barrington from January 2011 until December 2011. Rajaie filed a timely notice of appeal from both the January 17, 2012 supplemental judgment and the September 18, 2012 order resolving the parties' cross-motions for summary judgment.

¶ 14                                ANALYSIS

¶ 15 Kimberly raises two threshold issues–whether Rajaie has provided a sufficient record to permit us to decide the merits of the appeal and whether Rajaie properly preserved for appeal two of his four claimed errors. Citing *Foutch v. O'Bryant*, 99 Ill. 2d 389 (1984), Kimberly asserts that although Rajaie provided a transcript from the September 18, 2012 hearing addressing the cross-motions to reconsider, the absence of a transcript or bystanders' report from earlier hearings or the 10-day trial means we must presume the trial court's ruling was correct. We disagree. In *Foutch*, the supreme court addressed whether there is a "sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch*, 99 Ill. 2d at 391-92. The sufficiency of the record to address a claim of error turns on the question presented on appeal. In *Foutch*, the question was whether the trial court abused its discretion in denying the motion to vacate an *ex parte* judgment. *Id*. Absent a transcript of the hearing where evidence was heard and absent specific grounds for the denial, review for an abuse of discretion of the trial court's ruling was foreclosed. *Id*. at 392. Here, the record contains the trial court's January 17, 2012 written supplemental judgment for dissolution of marriage and its September 18, 2012, order addressing the parties' cross-motions to reconsider that judgment. The trial court's supplemental judgment setting forth its reasoning in detail and the September 18, 2012, order when read in conjunction with the transcript from the proceedings on that date, provide a sufficiently complete record for us to address its merits. But because the appellant is required to provide the reviewing court with a record sufficient to support his or her claims of error, any doubts and deficiencies arising from an insufficient record will be construed against Rajaie. *Foutch*, 99 Ill. 2d at 391.

¶ 16 Kimberly next contends two issues raised by Rajaie in his brief were not raised with the trial court, in the motion to reconsider, or in the docketing statement and thus are waived. Specifically, Kimberly contends that although the motion to reconsider raised the issues of the distribution of the home equity line of credit debt and the child support award issue, it did not raise the issue of the $50,000 distribution from Rajaie's 401(k) account to Kimberly or the trial court's valuation of the Alphabet Acres business, and thus, those issues have not been preserved for appeal. Again, we disagree.

¶ 17 "Unlike the specificity required in the notice of appeal, the docketing statement only requires a statement of the general issues proposed to be raised by the party, and the failure to include an issue in the docketing statement 'will not result in the waiver of the issue on appeal.' Ill. S. Ct. R. 312(a) (eff. Feb. 10, 2006). The docketing statement provides the appellate court with general information about a case docketed in the court and it is not intended to replace the notice of appeal." *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 177-78 (2011). Thus,

Rajaie's failure to include those two issues in the docketing statement is not grounds for finding he has waived those issues.

¶ 18 Illinois Supreme Court Rule 303(b) (eff. June 4, 2008) requires a notice of appeal to "specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." A notice of appeal vests this court with the power to decide the matters that are properly presented. *Heller Financial, Inc. v. Johns-Byrne Co.*, 264 Ill. App. 3d 681, 688 (1994). The notice of appeal serves the alternate purpose of informing the party that prevailed in the circuit court of the portion of the judgment that is, potentially, to be reviewed. *Schmidt v. Joseph*, 315 Ill. App. 3d 77, 80 (2000). "To that end, notice is to be liberally construed when determining what matters were properly raised in the notice, and a defect will be deemed one of form, so long as that construction does not prejudice the appellee." *Id.*

¶ 19 Kimberly is correct in asserting Rajaie did not raise the 401(k) issue or the valuation of Alphabet Acres in his motion for reconsideration. But in his notice of appeal, Rajaie states he is appealing from both the September 18, 2012 order and the January 17, 2012 supplemental judgment, which did deal with the allocation of the 401(k) account and the valuation of Alphabet Acres. Thus, we will address those issues, as well as the other issues raised on appeal.

¶ 20 Distribution of Debt on Home Equity Line of Credit

¶ 21 Rajaie contends the trial court erred in failing to require Kimberly to pay her share of the home equity line of credit she withdrew after the dissolution of marriage proceedings were filed and before the supplemental judgment was entered. In awarding Rajaie the marital home and determining the value of that asset, the trial court deducted the full amount of the home equity line of credit drawn by both parties, $299,724.56, along with the existing mortgage, in finding the property resulted in a net equity of $318,215.38. Rajaie contends the trial court should instead have ordered Kimberly to repay him the amount she individually drew from the home equity line of credit, which the parties stipulated was $131,000, and half of the amount the parties' jointly drew, which was stipulated to be $99,582.02. Kimberly asserts the trial court rejected Rajaie's earlier contention that her drawing from the line of credit constituted a dissipation of assets and that the trial court properly found the home and its liabilities were part of the marital estate.

¶ 22 Under the Act, after classifying property as marital or nonmarital, the trial court gives to each spouse his or her nonmarital property, and the marital property is divided into "just proportions." 750 ILCS 5/503(d) (West 2012). A trial court has broad discretion in the division of marital assets, and we will reverse its determinations only if it is clear that the trial court has abused that discretion. *In re Marriage of Sanfratello*, 393 Ill. App. 3d 641, 648 (2009). Illinois law vests the trial court with considerable discretion to exercise its judgment in resolving *matrimonial financial matters because an* equitable division depends on more than merely an analysis of dollars and cents. It also depends, for example, on the court's observations of the parties as they testified and responded at trial and the economic circumstances of each party. "A trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *In re Adoption of S.G.*, 401 Ill. App. 3d 775, 784 (2010).

¶ 23 A trial court may require that debts incurred following separation be paid by the party incurring them. *In re Marriage of Stufflebeam*, 283 Ill. App. 3d 923, 929 (1996). But those

debts may be considered marital, and it is within the trial court's discretion to order that the other party or both parties be held responsible for paying them. *Id.*

¶ 24    In determining the value of one of the marital assets–the parties' home–the court found that both the home and its liabilities were part of the marital estate. The court took the home equity line of credit into account by deducting the amount owed from the net equity amount awarded to Rajaie. Although Rajaie correctly asserts Kimberly was responsible for more than half of the amount owed, this distribution of marital debt does not equate to an abuse of discretion.

¶ 25                                    401(k) Distribution

¶ 26    Rajaie next contends that in dividing up the martial property the trial court erred by failing to offset Kimberly's earlier distribution of $50,000 from his 401(k) account. In the supplemental judgment, the trial court noted that each party took a $50,000 advance on the 401(k) account for attorney fees. The court then divided the remainder of the 401(k) evenly between the parties. Because both parties took a $50,000 advance, the distribution was not an abuse of discretion.

¶ 27                                Value of Daycare Business

¶ 28    Rajaie asserts the trial court erred in placing a value on the daycare business because the method it used–multiplying Kimberly's annual salary of $85,000 by three (the number of years the business was deemed reasonably viable) and subtracting $20,000 for rent and damages–was not an accepted method of valuing a business. Thus, Rajaie asks us to remand for further hearings on the value of the daycare business.

¶ 29    To place a specific value on an item of marital property, there must be competent evidence of its value presented. *In re Marriage of Miller*, 112 Ill. App. 3d 203, 208 (1983). Generally, the valuation of assets in an action for dissolution of marriage is a question of fact, and the trial court's determination will not be disturbed absent an abuse of discretion. *In re Marriage of Schneider*, 214 Ill. 2d 152, 162 (2005). But where a party does not offer evidence of an asset's value, the party cannot complain as to the disposition of that asset by the court. *In re Marriage of Tyrrell*, 132 Ill. App. 3d 348, 350 (1985). Parties should not be allowed to benefit on review from their failure to introduce evidence at trial. *Id.*

¶ 30    A party must present sufficient evidence of the value of the property, and where a party has had a sufficient opportunity to introduce evidence but offers none, that party should not benefit on review from its omission. Otherwise, remanding "would only protract the litigation and clog the trial courts with issues which should have been disposed of at the initial hearing." *In re Marriage of Smith*, 114 Ill. App. 3d 47, 54-55 (1983).

¶ 31    Rajaie acknowledges that neither he nor Kimberly presented evidence at trial regarding the value of Alphabet Acres. Rajaie contends, however, that stipulations by the parties showing the business had deposits of $336,709.97 in 2008 and $440,600.45 show that the business was worth more than $235,000, and should have been a factor the trial court used in determining the value of the business. Although the parties stipulated as to deposits, this alone is not sufficient to determine the value of the business as evidence of other factors, including good will, fixed assets, and business-related expenses would be needed to make a proper valuation. Because neither party presented meaningful evidence of the business's value, we cannot say that the trial court's method of valuation was an abuse of its discretion.

¶ 33       Lastly, Rajaie raises three issues regarding the trial court's orders addressing child support: (i) the parties' similar financial resources warranted a deviation from the statutory child support guidelines set forth in section 505(a)(1) of the Act (750 ILCS 5/505(a)(1) (West 2012)); (ii) the trial court abused its discretion in ordering him to pay retroactive child support to Kimberly for the period of March 2009 through September 2012; and (iii) the provision in the trial court's September 18, 2012 order requiring him to pay child support on his income from the 1410 S. Barrington commercial rental property without offsetting the losses he takes from other rental property was an abuse of discretion.

¶ 34       Under the Act, child support is calculated based on the noncustodial parent's net income. 750 ILCS 5/505(a)(1) (West 2012). "Net income" is defined as the total of all income from all sources, minus certain statutory deductions. 750 ILCS 5/505(a)(3) (West 2012). For three children the guidelines specify a minimum child support payment of 32% of the supporting parent's net income. 750 ILCS 5/505(a)(1) (West 2012). Section 505(a)(2) of the Act provides that a court must apply the statutory guidelines "unless the court finds that a deviation from the guidelines is appropriate after considering the best interest of the child in light of the evidence, including, but not limited to," the financial resources and needs of the child; the financial resources and needs of the custodial parent; the standard of living the child would have enjoyed had the marriage not been dissolved; the physical, mental, and emotional needs of the child; the educational needs of the child; and the financial resources and needs of the noncustodial parent. 750 ILCS 5/505(a)(2) (West 2012).

¶ 35       "Child support is an obligation the parents owe for the benefit of the child ***. Even in cases involving joint custody, when a primary physical custodian has been designated, the trial court has an obligation to award child support or explain its downward deviation from the statutory guidelines." *In re Marriage of Deem*, 328 Ill. App. 3d 453, 458 (2002). The statutory guidelines create a rebuttable presumption that child support in the guideline amount is appropriate. *Parks v. Romans*, 187 Ill. App. 3d 445, 448 (1989). The proponent of a deviation bears the burden of producing evidence that compelling reasons exist to justify the deviation. *Roper v. Johns*, 345 Ill. App. 3d 1127, 1130 (2004).

¶ 36       The trial court ordered Rajaie to pay the guideline amount of 32% of his net monthly income of $5,219.68 that is, $1,670.30 per month. Rajaie's primary contention for asserting grounds for a deviation from the statutory guidelines is that he and Kimberly have comparable annual salaries and that while the case was pending, Kimberly used funds from Alphabet Acres and the home equity line of credit. He asserts that *In re Marriage of Lee*, 246 Ill. App. 3d 628 (1993), held that "[w]here the individual incomes of both parents are more than sufficient to provide for the reasonable needs for the parties' children, taking into account the life-style the children would have absent the dissolution, the court is justified in setting a figure below the guideline amount." *Id*. at 643. But that case involved a high-income noncustodial parent, earning in excess of $450,000, and the court determined that the child's needs were adequately met by a monthly amount below the statutory guidelines and noted child support payments are not intended to be windfalls. Here, the parties were not high-income individuals, and the similar yearly income is not a compelling reason to deviate from the statutory guidelines. Further, there is no evidence Rajaie requested that the trial court deviate from the guidelines in setting support. A trial court does not abuse its discretion by failing to deviate *sua sponte* from the presumptively appropriate guidelines. *Roper*, 345 Ill. App. 3d at 1130.

¶ 37    We also find no error in the trial court's order requiring Rajaie to pay $30,386.03 for child support arrears retroactive to March 2009. It is within the trial court's discretion to award or not to award child support on a retroactive basis. *In re Marriage of Sawicki*, 346 Ill. App. 3d 1107, 1119 (2004). Kimberly requested custody of the parties' minor children and payment of child support in her petition for dissolution filed on April 1, 2009. The trial court awarded custody of the three minor children to Kimberly and in April 2011, entered an order dissolving the marriage and reserving all other issues in the case, including child support. After those issues were resolved, it was within the trial court's discretion to order Rajaie to pay child support retroactively for the 18 months before he started to pay in 2010.

¶ 38    Later, in its September 18 order addressing the parties' cross-motions for reconsideration, the court ordered Rajaie to also pay child support on the monthly income he earned from the 1410 S. Barrington property. With regard to 1410 S. Barrington, Rajaie acknowledges he derived monthly income from that rental commercial property but contends he should be permitted to deduct losses from some of his other noncommercial rental properties. As noted, "net income" is defined as the total of all income from all sources, minus certain statutory deductions. 750 ILCS 5/505(a)(3) (West 2012). Losses from rental real estate are not included as one of the statutory deductions. See *In re Marriage of Pylawka*, 277 Ill. App. 3d 728, 732 (1996) (trial court correctly refused to deduct from obligor's net income any passive activity investment loss arising from his ownership of apartment building). Further, in his brief, Rajaie fails to cite to any pages of the record that show losses. Because there is no basis for deducting losses Rajaie may have incurred in his ownership of other rental properties and no evidence of losses, the trial court's order requiring him to pay child support on that income was not an abuse of discretion.

¶ 39    We affirm the circuit court.

¶ 40    Affirmed.